UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BENITA K. BURRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-0198-CVE-FHM |
| | ) | |
| **DRESSER-RAND COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendant Dresser-Rand Company's Motion for Partial Summary Judgment and Incorporated Memorandum of Law in Support (Dkt. # 26). Plaintiff brought this suit to collect overtime compensation to which plaintiff alleges she is entitled under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 et seq. (FLSA). Dkt. # 2, at 4. Defendant admits that plaintiff is not exempt from the FLSA overtime compensation requirement and that she is entitled to overtime compensation under the FLSA. Dkt. # 10, at 4. Defendant now presents two issues for consideration: (1) whether plaintiff's damages should be calculated using the "half-time" or "time-and-a-half" method; and (2) whether the applicable statute of limitations is two or three years. Dkt. # 26, at 6. Defendant moves for partial summary judgment, arguing that (1) damages should be calculated using the "half-time" method, and (2) that the applicable statute of limitations is two years. Id. Plaintiff responds that both issues should be decided by a jury. Dkt. # 30, at 23, 26.

**I.**

Plaintiff is currently an employee of defendant, working in defendant's Tulsa office. Plaintiff began working for defendant's predecessor company in March 1977. Dkt. # 26, at 8; Dkt. # 30, at 9. Plaintiff began her career as a nonexempt[1] employee. Dkt. # 26-1, at 5. By 1996, plaintiff was classified as an exempt employee.[2] Plaintiff's scheduled hours of work are 7:30 a.m. to 4:30 p.m. with a one hour lunch break. Dkt. # 26, at 9; Dkt. # 30, at 11. At all times plaintiff was classified as an exempt employee, she understood that the hours she would actually work would sometimes exceed her scheduled hours. Id. Plaintiff's actual hours worked often exceeded forty hours a week. Id. When plaintiff worked more than forty hours in a week, her salary remained the same, and plaintiff did not expect additional payment for working additional hours. Id. Plaintiff's bi-weekly earning statements included an hours line that listed "80.00" by default. Dkt. # 26, at 11; Dkt. # 30, at 14.

In October 2015, defendant's compensation manager discovered that plaintiff's exempt classification was inconsistent with her position and notified Jeanne Foster, defendant's human resources manager, of the potential classification error. Dkt. # 26, at 13; Dkt. # 30, at 16. Foster began an investigation into plaintiff's classification. Id. In November or December 2015, Foster

---

[1] Employers are required to pay their employees overtime compensation for work exceeding forty hours a week. 29 U.S.C. § 207(a)(2)(C). Certain employees are exempt from this requirement. See 29 U.S.C. § 213. Throughout this opinion the terms "exempt" and "nonexempt" refer to whether an employee is exempt or nonexempt from the overtime compensation requirement under the FLSA.

[2] The record is unclear whether plaintiff was classified as exempt from 1981 to 2016, or whether she was classified as exempt from 1981 to 1982, nonexempt from 1982 to 1996, and exempt from 1996 to 2016. See Dkt. # 26-1, at 7-11. Either way, plaintiff was classified as exempt for the entirety of the relevant time period (up to three years preceding plaintiff's reclassification in January 2016).

2

called plaintiff's supervisor, Kyle Smith, to ask him about plaintiff's job duties. Id. Based on her conversation with Smith, Foster determined that plaintiff should not be classified as an exempt employee. Dkt. # 26-2, at 9, 17. Foster then contacted defendant's in-house legal counsel regarding plaintiff's exemption classification. Dkt. # 26, at 14; Dkt. # 30, at 17. In January 2016, defendant officially changed plaintiff's classification from exempt to nonexempt. Dkt. # 26, at 14.

After reclassifying plaintiff, Foster asked plaintiff to submit a record of her overtime hours for the preceding two years so that defendant could make an overtime back payment to plaintiff. Dkt. # 26, at 14; Dkt # 30, at 18. Defendant offered to pay plaintiff for the overtime hours she submitted at "half-time" her usual rate. Dkt. # 26, at 15; Dkt. # 30, at 19. Defendant filed suit in this Court in April 2016, alleging that defendant failed to pay her overtime compensation to which she was entitled under the FLSA. Dkt. # 2, at 4. Defendant admits that it misclassified plaintiff as exempt, but denies the amount of damages to which plaintiff alleges she is entitled. Dkt. # 10, at 3-4.

## II.

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which

are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327 (quoting Fed. R. Civ. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." Id. at 251-52. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Congress passed the FLSA in 1938 to protect workers from substandard wages and oppressive working hours, which it found to be detrimental to the "health, efficiency, and general well-being of workers." Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). The FLSA is designed to ensure each employee receives "[a] fair day's pay for a fair day's work." Overnight Motor Transp. Co. v. Missel, 316 U.S. 572 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt)) (internal quotation marks omitted), superseded on other grounds by statute as stated in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 n.22 (1985). The FLSA "established a comprehensive remedial scheme requiring a

minimum wage and limiting the maximum number of hours worked, absent payment of an overtime wage for all hours worked in excess of the specified maximum number." Lamon v. City of Shawnee, 972 F.2d 1145, 1149 (10th Cir. 1992). Under § 207, employers are required to compensate employees for time worked in a week in excess of forty hours at a rate of not less than one and one-half times the employee's regular rate. 29 U.S.C. § 207(a)(1). However, certain employees are exempt from the overtime compensation requirement. See id. § 213.

Here, defendant admits that it misclassified plaintiff as an exempt employee, and that plaintiff is entitled to overtime pay under the FLSA. Dkt. # 10, at 4. However, the parties disagree on the amount of damages to which plaintiff is entitled. Defendant moves for partial summary judgment, arguing that damages should be calculated using the "half-time" method, and that the applicable statute of limitations is two years. Dkt. # 26, at 6.

**A.**

The Court first considers the method by which plaintiff's overtime damages should be calculated. The FLSA requires employers to compensate nonexempt employees at one and one-half times the employee's regular rate for time worked beyond forty hours. 29 U.S.C. § 207(a)(1). For hourly employees, their regular rate is simply their hourly rate. Thus, they are due overtime pay at one and one-half times their hourly rate. However, determining the regular rate and overtime compensation of an employee who works variable hours but receives a flat salary is less straightforward.

**i.**

In Overnight Motor, the Supreme Court addressed the regular rate issue as applied to a salaried employee who worked variable hours. Missel was a rate clerk for Overnight Motor.

5

Overnight Motor, 316 U.S. at 574. He worked up to eighty hours a week, with an average workweek of sixty-five hours, and was paid a flat salary no matter the number of hours worked. Id. Missel brought a suit to recover unpaid overtime compensation. Id. Overnight Motor argued that even though Missel worked long hours, his salary was high enough that he was paid more than if he were paid the minimum wage for his regular hours and one and one-half times the minimum wage for his overtime hours. Id. at 575. The Court rejected this argument, holding that the overtime compensation requirement is separate from the minimum wage requirement, and that the FLSA requires employers to pay employees overtime at one and one-half times their regular rate, not the minimum wage. Id. at 577. The Court was then faced with determining the meaning of "the regular rate at which he is employed." Id. at 579. The Court found:

> No problem is presented in assimilating the computation of overtime for employees under contract for a fixed weekly wage for regular contract hours which are the actual hours worked, to similar computations for employees on hourly rates. Where the employment contract is for a weekly wage with variable or fluctuating hours the same method of computation produces the regular rate for each week. As that rate is on an hourly basis, it is regular in the statutory sense inasmuch as the rate per hour does not vary for the entire week, though week by week the regular rate varies with the number of hours worked.

Id. at 580 (footnote omitted). Thus, under Overnight Motor, each week the regular rate of a salaried employee with variable hours may be determined by dividing the weekly salary by the number of hours actually worked that week.

In 1968, the Department of Labor promulgated an interpretive rule approving the use of the "fluctuating workweek" (FWW) method to compensate salaried employees with fluctuating working hours for overtime. 29 C.F.R. § 778.114. Under the regulation, where there is a "clear mutual understanding" between the employee and the employer that the employee will be paid only a fixed salary (apart from overtime premiums) no matter the number of hours worked, the

6

employee's regular rate is calculated in the manner outlined in Overnight Motor: dividing the employee's weekly salary by the number of hours actually worked that week. Id. § 778.114(a). Moreover, because the employee has already been compensated for all hours worked under the salary arrangement, in order to satisfy the FLSA's overtime requirement, the employer must pay the employee only an additional one-half time the regular rate for overtime hours worked. Id.

> The application of the principles above stated may be illustrated by the case of an employee whose hours of work do not customarily follow a regular schedule but vary from week to week, whose total weekly hours of work never exceed 50 hours in a workweek, and whose salary of $600 a week is paid with the understanding that it constitutes the employee's compensation, except for overtime premiums, for whatever hours are worked in the workweek. If during the course of 4 weeks this employee works 40, 37.5, 50, and 48 hours, the regular hourly rate of pay in each of these weeks is $15.00, $16.00, $12.00, and $12.50, respectively. Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due. For the first week the employee is entitled to be paid $600; for the second week $600.00; for the third week $660 ($600 plus 10 hours at $6.00 or 40 hours at $12.00 plus 10 hours at $18.00); for the fourth week $650 ($600 plus 8 hours at $6.25, or 40 hours at $12.50 plus 8 hours at $18.75).

Id. § 778.114(b). The FWW method may be used only if (1) the employee's regular rate is above the FLSA's minimum hourly wage; (2) the employee clearly understands that the salary covers whatever hours the job may demand; and (3) the employer pays the salary even if the employee works less than a full schedule of hours. Id. § 778.114(c). Additionally, "where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with [FLSA] cannot be rested on any application of the fluctuating workweek overtime formula." Id.

**ii.**

Under Overnight Motor and 29 C.F.R. § 778.114, it is clear that an employer and an employee may comply with the FLSA by prospectively agreeing to a flat salary with half-time overtime compensation using the FWW method to determine the regular rate. However, courts disagree on the proper method for determining damages in a case involving a salaried employee who was misclassified as exempt. Courts have followed three paths in this situation: (1) calculate damages using the FWW method under § 778.114; (2) calculate damages using the FWW method[3] under Overnight Motor; or (3) calculate damages using the traditional time-and-a-half method.

Some courts, including the Tenth Circuit, have applied the FWW method to misclassification cases based on § 778.114. See, e.g., Clements v. Serco, Inc., 530 F.3d 1224, 1230 (10th Cir. 2008); Valerio v. Putnam Assocs. Inc., 173 F.3d 35 (1st Cir. 1999). In Clements, the Tenth Circuit explained that the "clear and mutual understanding" requirement of § 778.114 did not preclude misclassification cases because "[t]he parties must only have reached a 'clear and mutual understanding' that while the employee's hours may vary, his or her base salary will not." 530 F.3d at 1230 (quoting Valerio, 173 F.3d at 40). Thus, plaintiffs' "numerous inquiries" to the employer

---

[3] Defendant asserts that the term "FWW method" refers to only prospective agreements pursuant to § 778.114, and that the same method of calculating an employee's regular rate for misclassification damages under Overnight Motor should be called "half-time damages." Dkt. # 26, at 19. But regardless whether the sources of authority or requirements for the method to apply differ, the underlying method of both is the same, and for clarity's sake, the Court will refer to the method as the FWW method and specify the source of authority where relevant. See, e.g. Black v. SettlePou, P.C., 732 F.3d 492, 498 (5th Cir. 2013) ("[W]e rely on the Supreme Court's precedent in [Overnight Motor] . . . as the appropriate basis for using the FWW method to calculate the overtime premiums due to the employee in misclassification cases."); Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1311 (11th Cir. 2013) ("[U]nder [Overnight Motor], the fluctuating workweek method may be used to calculate an employee's regular rate of pay and corresponding overtime premium for use in determining damages under the FLSA.").

regarding the availability of overtime pay did not show there was not a clear and mutual understanding because "no agreement as to the payment of overtime ever existed." Id. at 1230-31. The only relevant inquiry was whether the employer and employees "had a clear and mutual understanding that they would paid on a salary basis for all hours worked." Id. at 1230. The court held that "[t]he existence of a clear and mutual understanding 'may be based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise.'" Id. at 1231 (quoting Mayhew v. Wells, 125 F.3d 216, 219 (4th Cir. 1997)). Therefore, the court determined that there was a clear and mutual understanding because the plaintiffs stated in their deposition testimony that they were hired on a salaried basis, that they routinely worked more than forty hours a week, and that they were neither docked for working less than forty hours a week nor compensated extra for working more than forty hours a week. Id. at 1230-31. Because there was a clear and mutual understanding, the court affirmed the district court's award of damages using the FWW method. Id. at 1231.

Several other circuit courts have determined that § 778.114 does not apply to misclassification cases, but that the FWW method should still be applied under Overnight Motor. See, e.g., Ransom v. M. Patel Enters., Inc., 734 F.3d 377, 384-86 (5th Cir. 2013); Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354-357 (4th Cir. 2011); Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665, 678-81 (7th Cir. 2010). These courts have determined that § 778.114 is a forward looking rule that cannot be applied retroactively for two key reasons. First, there cannot be a clear and mutual understanding when there has been a mutual mistake as to the

9

employee's exemption under the FLSA. See, e.g., Urnikis-Negro, 616 F.3d at 678. And second, § 778.114(c) requires a separate, contemporaneous payment of an overtime premium. See, e.g., id.

After concluding § 778.114 is inapplicable to misclassification cases, these courts have turned to Overnight Motor to calculate an employee's regular rate. If the employee and employer agreed that a fixed salary would "constitute payment at the regular rate for any and all hours worked," then the regular rate will be calculated using the FWW method as in Overnight Motor. Id. at 680. For example, in Urnikis-Negro, the Seventh Circuit affirmed the district court's determination that the parties agreed that the plaintiff's salary was meant to compensate her for however many hours she worked when: (1) plaintiff expected to work only forty hours a week when she was hired; (2) one of defendant's employee's testified that all employees were paid based on a forty-hour week; (3) plaintiff routinely worked more than forty hours a week; and (4) plaintiff's salary did not vary based on her increased hours of work. See id. The district court determined that although plaintiff probably thought she would be working only forty hours a week, she also understood that her salary would cover whatever time she was called upon to work in a given week. Id. Therefore, the Seventh Circuit determined that Overnight Motor dictated that the FWW method should be used to calculate plaintiff's damages. Id. at 681-83.

Finally, many district courts, primarily in circuits that have not weighed in on this issue, have rejected the FWW method in misclassification cases and calculated damages using the traditional time-and-a-half method. See, e.g., Costello v. Home Depot USA, Inc., 944 F. Supp. 2d. 199, 203-09 (D. Conn. 2013); Russell v. Wells Fargo & Co., 672 F. Supp. 2d 1008, 1013-14 (N.D. Cal. 2009); Hunter v. Sprint Corp., 453 F. Supp. 2d 44, 59-62 (D.D.C. 2006); Cowan v. Treetop Enters., 163 F. Supp. 2d 930, 941-42 (M.D. Tenn. 2001); Rainey v. Am. Forest & Paper Assoc., 26 F. Supp. 2d 82,

100-02 (D.D.C. 1998). In these cases, courts have followed the same logic as the Fifth, Fourth, and Seventh Circuits in rejecting the application of § 778.114 because there could be no clear mutual understanding or contemporaneous overtime compensation in a misclassification case. See, e.g., Russell, 672 F. Supp. 2d at 1014. However, instead of interpreting Overnight Motor as a separate source of authority for applying the FWW method, these courts characterize § 778.114 as a codification of Overnight Motor. See, e.g., id. at 1011; Costello, 944 F. Supp. 2d at 204. Viewing § 778.114 as an explanation of when to apply Overnight Motor, these courts have reasoned that if the requirements of § 778.114 are not met, Overnight Motor does not apply.

      Moreover, as the district court in Costello explained, there are several reasons why applying the FWW method in misclassification cases is inconsistent with Overnight Motor. First, even if the parties had a clear and mutual understanding that the employee would work over forty hours a week without overtime pay based on a mutual mistake regarding the employee's exemption from the FLSA, such an arrangement amounts to an agreement not to receive overtime payment, which is illegal because an employee cannot waive their right to overtime pay under the FLSA. Costello, 944 F. Supp. 2d at 207. Second, "although the text of [Overnight Motor] is not entirely clear on this point, [Overnight Motor] does mention failure to include a provision regarding contemplation of

11

payment of overtime as a reason for rejecting the contract at issue in that case.[4] Id. (citing Hasan v. GPM Invs., LLC, 896 F. Supp. 2d 145, 150 (D. Conn. 2012)). Third, reading Overnight Motor to allow the FWW method in misclassification cases runs counter to the policy implications of the FLSA and the case itself. Id. at 208. Assessing damages using the FWW method "provides a perverse incentive to employers to misclassify workers as exempt, and a windfall in damages to an employer who has been found liable for misclassifying employees under the FLSA." Id. (quoting Perkins v. S. New Eng. Tele. Co., No. 3:07-CV-967 (JCH), 2011 WL 4460248, at *4 n.5 (D. Conn. Sep. 27, 2011)).

### iii.

Defendant takes the position of the Fifth, Fourth, and Seventh Circuits, arguing that § 778.114 is inapplicable to misclassification cases, but that the FWW method should be applied based on Overnight Motor. Dkt. # 26, at 19 n.4. Consequently, defendant asserts that there is no requirement of a clear and mutual understanding. Dkt. # 37, at 4-5 n.4. Further, although the Tenth Circuit followed § 778.114 and its clear and mutual understanding requirement in Clements, defendant seems to insinuate that the court was not fully briefed on the issue because counsel on

---

[4] The importance of a prospective agreement between the parties is even more clear when Overnight Motor is read in conjunction with Walling v. A.H. Belo Corp., 316 U.S. 624 (1942). Decided the same day as Overnight Motor, Walling concerned a payment scheme in which the employer guaranteed the employees a minimum weekly salary, and to earn more than the guaranteed payment employees had to work more than fifty-four-and-a-half hours in a week. 316 U.S. at 628. The Court approved the payment scheme because employees would not have to work an indefinite number of hours without overtime compensation, and, despite the "artificiality of the method," overtime payment was contemplated within the guaranteed payment. Id. at 631-34. An overarching message may be gleaned from the two cases that creative payment plans prospectively agreed upon that comply with the intention of the FLSA are permissible (Walling), while creative payment plans retroactively constructed by employers to minimize payment are impermissible (Overnight Motor).

12

both sides "improperly conflated the FWW concept and the determination of backpay in a misclassification case." Dkt. # 26, at 19 n.4. Plaintiff asserts that "Clements is the controlling authority in the Tenth Circuit and [defendant] cannot avoid Clements no matter how hard it tries." Dkt. # 30, at 24 n.13.

Clements was decided in 2008, two years before the Seventh Circuit in Urnikis-Negro became the first circuit court to reject § 778.114 and apply the FWW method in misclassification cases based on Overnight Motor. Since Urnikis-Negro, the Fourth Circuit has adopted the Overnight Motor approach, Desmond, 630 F.3d at 354-357; the Fifth Circuit has altered its stated authority for applying the FWW method from § 778.114 to Overnight Motor, compare Blackmon v. Brookshire Grocery Co., 835 F.3d 1135, 1138-39 (5th Cir. 1988), with Ransom, 734 F.3d at 384-86; and the Eleventh Circuit has strongly indicated it agrees with Urnikis-Negro's central holding, Lamonica, 711 F.3d at 1310-11. As defendant notes, the "weight of authority" supports its position. Dkt. # 37, at 4 n.4. However, Clements is the law in this circuit. Additionally, the briefs filed in Clements satisfy this Court that the parties brought all the relevant arguments to the Tenth Circuit's attention regarding the application of the FWW method. The clear and mutual understanding and contemporaneous overtime payment requirements of § 778.114 were extensively covered. See Brief of Plaintiffs/Appellees/Cross-Appellants, Garry Clements and David Gerber at 35-44, Clements, 530 F.3d 1224 (10th Cir. 2008). And the defendant argued that Overnight Motor, not § 778.114, was the proper standard for whether the FWW method should be applied. Reply Brief of Plaintiffs/Appellees/Cross-Appellants, Gary Clements and David Gerber at 6-7, Clements, 530 F.3d 1224 (10th Cir. 2008). Thus, the Court will proceed under Clements.

**iv.**

Defendant argues that summary judgment is appropriate because plaintiff has conceded all the factors considered in Clements. Dkt. # 26, at 19 n.4. Plaintiff asserts that there is a genuine dispute as to the number of hours for which plaintiff's salary was intended to compensate. Dkt. # 30, at 24-25. Whether there was a clear and mutual understanding between the parties is a question of fact; the appropriate methodology to determine the total amount owed is a question of law. Ransom, 734 F.3d at 381.

Section 778.114 requires "a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period . . . ." 29 C.F.R. § 778.114(a). As discussed above, this requirement is an awkward fit in misclassification cases. In Clements, the Tenth Circuit recognized that as applied to a misclassification case, § 778.114 could not require an agreement as to how overtime premiums would be calculated because "[t]he parties initially agreed that no overtime would be paid; thus, no agreement as to the payment of overtime ever existed." 530 F.3d at 1230. Instead, the court interpreted the clear and mutual understanding requirement in misclassification cases to mean that the parties "reached a 'clear mutual understanding' that while the employee's hours may vary, his or her base salary will not." Id. (quoting Valerio, 173 F.3d at 40).

Here, it is undisputed that plaintiff was to be paid a flat salary that would not vary if she worked more than forty hours. Plaintiff stated in her deposition testimony that she expected to work more than forty hours a week, that she often worked more than forty hours a week, and that she never expected to be paid more when she worked more than forty hours in a week. Dkt. # 26-1, at

14

11-12. Plaintiff asserts that she thought her salary was for a forty-hour week and that the additional time she spent working was free labor. Id. at 11. Plaintiff asserts that her interpretation is based on her biweekly earning statements, which contain a row for "Hours" that lists "80.00" and the assertions of someone at one of defendant's predecessor companies that her salary was for forty hours of work. Id. at 12-13.

Plaintiff's evidence does not create a genuine dispute of any material fact. In Clements, a manager at the defendant-company stated that employees "would be paid a salary of $600 per week and that this would work out to $15.00 per hour." 530 F.3d at 1231. The plaintiffs asserted that they understood the manager's statement to mean they would be compensated for forty hours of work a week. Id. The Tenth Circuit held that this evidence did not create a disputed material fact because "[t]he existence of clear and mutual understanding 'may be based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise." Id. (quoting Mayhew, 125 F.3d at 219). Instead, the court found that there was sufficient evidence to establish a clear mutual understanding because the defendant presented evidence that the plaintiffs understood that although their hours may vary, their pay would not. Similarly, plaintiff's after-the-fact statements regarding her understanding of a statement an unknown employee of defendant's predecessor company made at some point many years ago and a line on her earnings statement that appeared by default on all employee's statements, see Dkt. # 26-6, at 3-4, do not create a genuine dispute as to any material

fact. Plaintiff's deposition testimony and actions throughout her employment[5] are sufficient to find that there was a clear mutual understanding between the parties that plaintiff would receive a flat salary no matter the number of hours she worked.[6] Thus, the fluctuating workweek method should be used to calculate plaintiff's damages. See Clements, 530 F.3d at 1231.

**B.**

The Court next considers the applicable statute of limitations. The FLSA statute of limitations is two years, except in cases of "willful violation," which have a three-year limitations period. 29 U.S.C. § 255(a). To obtain the benefit of the longer limitations period, the plaintiff must show "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). If an employer acted reasonably, it did not willfully violate the FLSA. Id. at 135 n.13.

Plaintiff argues that Foster determined in early November 2015 that plaintiff was misclassified, but that defendant intentionally failed to rectify the situation until January 2016. Dkt. # 30, at 27. However, there is no evidence that defendant intentionally or recklessly delayed

---

[5]  Even if the question were whether there was an agreement that plaintiff's salary was for forty hours of work or however many hours plaintiff worked, defendant would still be entitled to summary judgment. No rational trier of fact could find that plaintiff worked for defendant for decades without complaint, see Dkt. # 26-1, at 12, believing that she was only paid for forty hours and that the countless extra hours she put in were free labor.

[6]  Plaintiff also argues that the fact that defendant currently pays plaintiff overtime at a rate of time and a half her hourly rate is evidence that there was no clear mutual agreement that plaintiff's salary covered all her working hours. Dkt. # 30, at 25-26. How plaintiff is currently compensated is irrelevant to this suit. First, the parties came to a new agreement regarding plaintiff's compensation after the misclassification was discovered. And second, the FLSA sets out the minimum overtime payment to which an employee is entitled. Defendant is free to pay plaintiff more than the FLSA requires. See Walling, 316 U.S. at 632.

16

reclassifying plaintiff. In October 2015, defendant's compensation manager informed Foster that plaintiff might be misclassified, at which point Foster began an investigation. Dkt. # 26, at 13; Dkt. # 30, at 16. Foster stated in her deposition testimony that she determined sometime in November or December that plaintiff should not be classified as an exempt employee. Dkt. # 26-2, at 9, 17. Plaintiff asserts that this determination happened in early November. Dkt. # 30, at 27. At some point, Foster contacted defendant's in-house legal counsel regarding plaintiff's exemption classification, and plaintiff's exemption status was officially changed in January 2016. Dkt. # 26, at 14; Dkt. # 30, at 17.

Plaintiff's only proffered evidence is that Foster made her determination in early November and the official change was made in January. But it was entirely reasonable for Foster to consult with the in-house legal counsel regarding plaintiff's misclassification before officially changing her status. That the process took up to three months to be fully and officially resolved is not evidence of an intentional or reckless violation of the FLSA. At worst, the three months indicate that the wheels of corporate bureaucracy may be slow. But there is absolutely no evidence that defendant did not act reasonably when it discovered the problem, conducted an investigation, considered the legal ramifications, and then informed the plaintiff that she was misclassified. Because plaintiff has not provided any evidence of a willful violation, the applicable statute of limitations is two years.

**IT IS THEREFORE ORDERED** that Defendant Dresser-Rand Company's Motion for Partial Summary Judgment and Incorporated Memorandum of Law in Support (Dkt. # 26) is **granted**.

**DATED** this 28th day of November, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE